FREDERICK MAROUN *v.* RICHARD TARRO ET AL.
(12209)

O'CONNELL, LANDAU and HEIMAN, Js.

Argued May 2—decision released August 9, 1994

*Kimball Haines Hunt,* with whom, on the brief, was *Heidi Cornish,* for the appellant (named defendant).

*Barbara E. Gardner,* for the appellee (substitute plaintiff).

O'CONNELL, J. The named defendant appeals from a $45,000 jury verdict for the substitute plaintiff in this conversion action.[1] The defendant claims that the trial

---

[1] The named plaintiff died on October 7, 1990, and his administratrix was substituted as a party plaintiff. For simplicity, our references to the "plaintiff" are to the deceased or his administratrix, whichever is appropriate. The action was withdrawn as to the defendants Kathleen Wallack and Newfield Motors, Inc. References in this opinion to the "defendant" are to the named defendant.

court (1) improperly denied his motions for a directed verdict and his motion for judgment notwithstanding the verdict, (2) improperly failed to set aside the plaintiff's verdict because the evidence did not support the award of damages, and (3) improperly denied the defendant's motion in limine to preclude the plaintiff from introducing certain exhibits. We reverse the judgment of the trial court.[2]

The jury reasonably could have found the following facts. On June 27, 1986, the plaintiff purchased a 1969 280 SE Mercedes Benz automobile from Newfield Motors, Inc., for $19,000. The plaintiff paid the purchase price by conveying a used car to Newfield Motors. At the time of the purchase, the Mercedes was in a gutted skeletal condition. It was agreed that Newfield Motors would renovate the Mercedes into a classic show car. The plaintiff paid $8000 for this service with a check payable to the order of Newfield Motors, Inc.

Kathleen Wallack was the president of Newfield Motors and signed all documents pertaining to the transaction. The defendant was Wallack's friend and spent considerable time at Newfield Motors. The defendant denied being an employee of Newfield Motors but was unable to explain why his name appeared on the bill of sale as the salesman. The restoration originally was to take six months, but complications with the leather for the interior and a cracked windshield caused extended delays.

In late 1987, the plaintiff received a telephone call from a deputy sheriff advising him that Newfield Motors was being closed and suggesting that the plaintiff retrieve his car because vandalism to other vehicles had taken place on the Newfield Motors premises.

---

[2] Because our resolution of the defendant's first claim is dispositive of the appeal, we do not reach the defendant's second and third claims.

At that time, the plaintiff's wife spoke to Wallack by telephone and was assured that although Newfield Motors had been closed, the Mercedes was in storage at her residence at 9 Sunny Ridge in New Britain and that work on it was continuing. There was evidence from which the jury could have found that the 9 Sunny Ridge property was owned by the defendant and occupied by the defendant and Wallack.

In early March, 1988, the plaintiff received two parking tickets in the mail, charged to the Mercedes. On March 12, 1988, the plaintiff's son went to Wallack's residence to obtain the car. Wallack refused to turn over the car to the plaintiff's son at that time, but did return it to the plaintiff later that same day when the plaintiff arrived at Wallack's residence with a New Britain police officer. This return was facilitated when the defendant, at Wallack's request, took the car keys from his pocket and gave them to the plaintiff. The vehicle, covered with sand and salt, was parked in the driveway of Wallack's residence. Its odometer registered an increase of nearly 4000 miles over what it showed at the time of purchase. It had a scratch on the passenger side door and the left rear brake made a loud scraping sound for which Wallack gave the plaintiff a brake rotor. The plaintiff's son drove the car away that night.

Prior to the day on which the plaintiff retrieved his car, the last time the plaintiff or his wife had seen the vehicle was in the middle of 1987 in a showroom at Newfield Motors. At that time, neither the leather upholstery nor the carpeting had been installed. The plaintiff's son saw the car in the Newfield Motors garage[3] about a month prior to the March 12, 1988 retrieval and did not observe any damage to it at that time.

---

[3] We note that the testimony of the plaintiff's son is inconsistent with the evidence that Newfield Motors had been closed since late 1987 and the car had been at Wallack's New Britain residence from that time forward.

We commence our analysis by noting that this case was tried on one count alleging conversion by the defendant.[4] There was no claim of a breach of bailment by Newfield Motors or by anyone else, nor was there a claim of negligence in the operation of the vehicle by the defendant or by anyone acting as the agent or servant of Newfield Motors. The complaint alleged that subsequent to June 26, 1986, the defendant operated the vehicle on the highways without authority and damaged or caused the vehicle to be damaged while it was in his possession and control.[5]

The defendant moved for a directed verdict at the conclusion of the plaintiff's case and also at the conclusion of all the evidence. Both motions were denied. Following return of the jury's verdict, the defendant filed a motion to set aside the verdict and for a new trial and a motion for judgment in favor of the defendant notwithstanding the verdict. Practice Book §§ 320 and 321. In each of those motions, the defendant argued that the facts submitted in evidence were insufficient to sustain a verdict for the plaintiff.

"Directed verdicts are not favored. *Puro* v. *Henry,* 188 Conn. 301, 303, 449 A.2d 176 (1982). *Petyan* v. *Ellis,* 200 Conn. 243, 244, 510 A.2d 1337 (1986). Our review of a trial court's refusal to direct a verdict or to render a judgment notwithstanding the verdict takes place within carefully defined parameters. We must consider the evidence, including reasonable inferences which may be drawn therefrom, in the light most favorable to the parties who were successful at trial; *Bleich* v. *Ortiz,* 196 Conn. 498, 501, 493 A.2d 236 (1985); giv-

---

[4] Other counts against other defendants on other causes of action were removed from the case prior to trial.

[5] Additional allegations of failure to return the vehicle on demand were not supported by the evidence because the car was returned the same day on which demand for it was made. The trial court did not charge the jury on wrongful detention.

ing particular weight to the concurrence of the judgments of the judge and the jury, who saw the witnesses and heard the testimony . . . . *Chanosky* v. *City Building Supply Co.,* 152 Conn. 642, 643, 211 A.2d 141 (1965). The verdict will be set aside and judgment directed only if we find that the jury could not reasonably and legally have reached their conclusion. . . . *Bound Brook Assn.* v. *Norwalk,* 198 Conn. 660, 667, 504 A.2d 1047, cert. denied, 479 U.S. 819, 107 S. Ct. 81, 93 L. Ed. 2d 36 (1986) . . . . *Iseli Co.* v. *Connecticut Light & Power Co,* 211 Conn. 133, 140, 558 A.2d 966 (1989)." (Internal quotation marks omitted.) *John T. Brady & Co.* v. *Stamford,* 220 Conn. 432, 440–41, 599 A.2d 370 (1991).

"The tort of conversion boasts a well established definition which is not disputed by the parties. Conversion occurs when one, without authorization, assumes and exercises the right of ownership over property belonging to another, to the exclusion of the owner's rights. . . . The seminal case in this state regarding conversion is *Coleman* v. *Francis,* 102 Conn. 612, 129 A. 718 (1925) . . . . *Coleman* established that there are two general classes of conversion: (1) that in which possession of the allegedly converted goods is wrongful from the outset; and (2) that in which the conversion arises subsequent to an initial rightful possession. Id., 615." (Citations omitted; internal quotation marks omitted.) *Luciani* v. *Stop & Shop Cos.,* 15 Conn. App. 407, 409–10, 544 A.2d 1238, cert. denied, 209 Conn. 809, 548 A.2d 437 (1988).

The parties agree that the present case falls into the second conversion class because it involves a claim that rightful possession of a car became conversion when the defendant wrongfully used the car or exercised wrongful dominion over it. The complaint alleges that the vehicle was put into the possession of Newfield Motors. It does not allege that it was put into the

defendant's possession. Thus, absent an allegation and proof that the vehicle was initially put into the defendant's lawful possession, the plaintiff has not made out a case under the second class of conversion. Even if we disregard the parties agreement that this is conversion under the second class, the plaintiff has not alleged and proved wrongful possession of the car from the outset as required under the first class of conversion.

Moreover, there is no allegation or evidence of when the unauthorized use and damage occurred except that it was some time after the purchase and prior to the return of the vehicle to the plaintiff. There is no evidence, direct or circumstantial, or inferences that can reasonably be drawn from any evidence, that the defendant ever operated or caused the operation of the plaintiff's Mercedes Benz. Under these circumstances, further discussion of the law of conversion is not warranted.

The plaintiff in the present case may have a cause of action of some type against someone, but the evidence and inferences reasonably drawn therefrom do not show that cause of action to be against this defendant for conversion. Accordingly, "the jury could not reasonably and legally have reached their conclusion"; *Bound Brook Assn.* v. *Norwalk,* supra, 198 Conn. 667; and the trial court should have granted the defendant's motions for a directed verdict or his motion to set aside the verdict and rendered a judgment in his favor notwithstanding the verdict.

The judgment is reversed and the case is remanded with direction to set aside the verdict and to render judgment for the defendant.

In this opinion the other judges concurred.