[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON DEFENDANT'S MOTION TO STRIKE
CT Page 10670
FACTUAL BACKGROUND
On March 6, 1995, the plaintiff, Abley Waste Oil Services, Inc., filed a six-count complaint against the defendant, Ravenswood Development Corp., arising out of a contract to remove used oil from the defendant's property. The plaintiff alleges that on September 21, 1994, the defendant, through its president Richard Fiske, signed an Agreement for the removal of used oil from the defendant's property whereby it warranted that the oil had "not been mixed, combined, or otherwise blended in any quantity with materials containing polychlorinated biphenyls (PCBs) or any other material defined as hazardous waste." See copy of Agreement attached to Plaintiff's Complaint and marked as Exhibit A. The plaintiff claims that on September 26, 1994, it notified the defendant that the oil removed from the defendant's property under the Agreement was contaminated with PCBs. According to the allegations of the complaint, the plaintiff arranged for secure and appropriate storage of the trucks, as requested by the defendant, until the defendant arranged for the removal and disposal of the PCB contaminated oil on November 7, 1994. Despite its demands, the plaintiff alleges that the defendant refused to decontaminate the plaintiff's trucks. The plaintiff now seeks damages as a result of the loss of the use of its trucks and the costs incurred in decontaminating those trucks.
The complaint consists of six counts. The plaintiff alleges that the defendant was negligent in failing to determine whether the used oil was contaminated with hazardous waste (first count), breached its contract in failing to notify the plaintiff that the oil was contaminated (second count), breached a warranty that the oil did not contain PCBs (fourth count), and negligently misrepresented that the oil was not contaminated with PCBs (fifth count). The third count alleges that the defendant engaged in an unfair and deceptive trade practice in violation of CUTPA, General Statutes § 42-110a et seq., causing the plaintiff to suffer damages and incur costs and attorneys' fees. The sixth and final count alleges that the defendant is liable in conversion as a result of the plaintiff's loss of the use of its trucks from approximately September 22, to November 7, 1994.
On April 28, 1995, the defendant filed a motion to strike the third and sixth counts of the complaint on the ground that they CT Page 10671 fail to state claims upon which relief can be granted. In support of this motion, the defendant has filed a memorandum of law. On May 17, 1995, the plaintiff filed an opposing memorandum of law.
LEGAL DISCUSSION
I. Third Count — CUTPA
The defendant moves to strike the third count of the plaintiff's complaint on the grounds that it fails to state a claim upon which relief can be granted in that: 1) it does not allege that the defendant engaged in the trade or commerce of selling and disposing of waste oil; 2) the complaint fails to allege that the defendant engaged in wrongful conduct with such frequency as to indicate a general business practice; and 3) CUTPA was not designed to protect persons in the position of the plaintiff in relation to the defendant.
The plaintiff argues in its opposing memorandum that the distribution of the used oil by the defendant "falls within the requirements of CUTPA in that the defendant in doing this was engaging in `any trade or commerce.'" Plaintiff's Memorandum, p. 5. Because the development of land for residential purposes necessarily involves the removal of unwanted property from the site, the plaintiff argues, the removal of used oil from the site in the present case was a function of the defendant's trade or commerce and not purely incidental to that trade or commerce as was the leasing of the site by the defendant in ArawanaMills Co. v. United Technologies Corp., 795 F. Sup. 1238
(D.Conn. 1992).
Second, the plaintiff claims that an allegation that the defendant engaged in wrongful conduct with such frequency as to indicate a general business practice is not necessary. The plaintiff argues that it is well established that "[a] single act of conduct, . . ., is all that is required to maintain a cause of action under CUTPA." Plaintiff's Memorandum, p. 5, citingCardello v. Reves, 3 CSCR 466 (April 15, 1988) (Walsh, J.). Finally, the plaintiff argues that a CUTPA claim is not limited to conduct involving consumer injury, but rather that a competitor or other business person can maintain a CUTPA cause of action without showing consumer injury. Plaintiff's Memorandum, p. 6, citing McLaughlin Ford Inc. v. Ford Motor Co.,192 Conn. 558, 566-67, 473 A.2d 1185 (1984); Fiorillo v.Murray, 3 CSCR 577 (June 10, 1988) (Burns, J.) (CUTPA claim CT Page 10672 may be maintained between two commercial parties).
General Statutes § 42-110b(a) provides that "[n]o person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." A "trade or commerce" is defined in CUTPA as "the advertising, the sale or rent or lease, the offering for sale or rent or lease, or the distribution of any services and any property . . . and any other article, commodity or thing of value in this state." General Statutes § 42-110a(4).
"It is well settled that in determining whether a practice violates CUTPA we have adopted the criteria set out in the cigarette rule by the federal trade commission for determining when a practice is unfair: (1) [w]hether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law, or otherwise — whether, in other words, it is within at least the penumbra of some common law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury to consumers [or competitors or other businessmen]. . . ." (Internal quotation marks omitted.)Associated Investment Co. Ltd. Partnership v. WilliamsAssociates IV, 230 Conn. 148, 155, 645 A.2d 505 (1994). "[A]ll three criteria do not need to be satisfied to support a finding of unfairness. A practice may be unfair because of the degree to which it meets one of the criteria or because to a lesser extent it meets all three. . . . Thus a violation of CUTPA may be established by showing either an actual deceptive practice . . . or a practice amounting to a violation of public policy. . . . Furthermore, a party need not prove an intent to deceive to prevail under CUTPA." (Internal quotation marks omitted.) Id., 156.
A. The Conduct of Trade or Commerce
The defendant argues in its memorandum that in order to state a claim under CUTPA, the plaintiff must allege that the acts complained of were performed in a "trade or business." Because the plaintiff has not alleged, nor could the plaintiff allege, that the defendant was engaged in the business of disposal of waste oil, the defendant claims that the plaintiff has failed to state a claim under CUTPA. According to the defendant, the disposal of waste oil is incidental to the defendant's business CT Page 10673 of developing real estate. In support of this argument, the defendant relies in part on Arawana Mills Co. v. UnitedTechnologies Corp., 795 F. Sup. 1238, 1252-53 (D.Conn. 1992), in which the court held that the plaintiff failed to state a claim under CUTPA for the defendant's conduct in leasing the plaintiff's property, because leasing property was not this defendant's "trade or commerce" within the meaning of CUTPA. The defendant argues that because the disposal of waste oil is incidental to its primary trade or commerce of developing real estate, the alleged acts of the defendant were not committed in the conduct of its trade or commerce.
"In order to allege a CUTPA violation properly, the plaintiff must allege, inter alia, that the acts complained of were performed in a `trade or business.'" (Internal quotation marks omitted.) Pergament v. Green, 32 Conn. App. 644, 655,630 A.2d 615, cert. denied, 228 Conn. 903 (1993). Because the plaintiff's complaint was devoid of any allegation that the acts complained of were performed in a "trade or business," the court in Pergament v. Green held that the plaintiff failed to frame a cause of action under CUTPA. Id. Although the plaintiff in the present case does not expressly allege in the complaint that the defendant is in the business of developing real estate and that the alleged wrongful acts were committed in the conduct of that trade or business, these facts are "necessarily implied and fairly provable under the allegations." Westport Bank Trust Co. v. Corcoran, Mallin Aresco, 221 Conn. 490, 495, 605 A.2d 862 (1992). See Plaintiff's Complaint, ¶ 4 ("The property . . . is being developed for residential use by the defendant.").
In Arawana Mills Co. v. United Technologies Corp.,
supra, 795 F. Sup. 1238, the plaintiff lessor brought an action against the defendant lessee alleging that the defendant had deposited hazardous waste on the property. The issue in that case was "whether defendant's act of leasing the Property from plaintiff is in the conduct of defendant's `trade or commerce' within the meaning of CUTPA." Id. 1252. In dismissing the plaintiff's CUTPA claim, the court concluded that "defendant's act of leasing property from plaintiff is incidental to the conduct of its true business on the Property, the repair and servicing of aircraft engines." Id. The court noted that "plaintiff has not alleged facts to establish that defendant is in the `trade or commerce' of leasing property, but has alleged that defendant is in the `trade or commerce' of repairing or CT Page 10674 servicing aircraft engines. . . . Accordingly, plaintiff lessor has no claim under CUTPA against defendant lessee for defendant's conduct in leasing the Property, because leasing property is not this defendant's `trade or commerce' within the meaning of CUTPA." (Citations omitted.) Id.
In a recent Superior Court opinion, the court granted a motion to strike the plaintiffs' CUTPA claim against the defendant manufacturing companies arising out of the disposal of hazardous waste at a landfill. Barnes v. General ElectricCo., 14 Conn. L. Rptr. 455 (August 28, 1995) (Hennessey, J.). In Barnes, the plaintiffs argued that the disposal of the by-products of the manufacturing process by the defendants "was an integral and necessary part of the trade or commerce engaged in by these defendants." Id., 460. Relying in part onArawana Mills Co. v. United Technologies Corp., the court found that the defendants' activities in connection with the landfill "are not within the normal `trade or commerce' of these parties within the meaning of CUTPA." Id., 461. Because the court found that "the defendant's disposal of hazardous and toxic waste chemicals . . . are merely incidental to the primary trade or commerce of the defendants," the court concluded that "a CUTPA claim based on such conduct is not viable against the defendants." Id. See also Mayer-Wittmann Joint Ventures,Inc. v. Gunther International, Ltd., 12 Conn. L. Rptr. 532, 533 (October 21, 1994) (Lewis, J.) ("[T]he central issue in determining whether CUTPA should apply is whether `the party against whom [the CUTPA claim] is made is in the business ofentering into transactions of the type that is at issue."') (Emphasis in the original.).
The parties in the present case raise essentially the same issues that were decided by the court in Barnes v. GeneralElectric Co. In the present case the issue is whether the alleged acts of misconduct were committed in the conduct of the defendant's trade or commerce within the meaning of General Statutes § 42-110a(4).[1] While the defendant in the present case argues that the disposal of waste oil is incidental to its primary business of real estate development, the plaintiff argues that the defendant's trade or commerce necessarily involves the disposal of waste. However, this court will adopt the court's reasoning in Barnes v. General ElectricCo., and hold that the disposal of waste oil by the defendant is "merely incidental to the primary trade of the defendant." Barnes v. General Electric, Co., supra, CT Page 1067514 Conn. L. Rptr. 461. "Therefore, a CUTPA claim based on such alleged conduct is not viable against the defendant; "id.; and the defendant's motion to strike must be granted as to Count Three. The other grounds for the motion to strike count three will not be addressed.
II. Sixth Count — Conversion
The defendant also moves to strike the sixth count (conversion) on the ground that the complaint does not allege that the defendant wrongfully withheld possession of the plaintiff's property or tampered with plaintiff's property while in the defendant's possession. The defendant argues that conversion involves the "unauthorized assumption and exercise of the right of ownership over goods belonging to another, to the exclusion of the owner's rights." Defendant's Memorandum, citingFalker v. Samperi, 190 Conn. 412, 419-20, 461 A.2d 681
(1983). The defendant contends that because plaintiff Abley does not allege that it was unable to obtain its trucks at any point in time, or that defendant Ravenswood exercised dominion or control over those trucks, the plaintiff has failed to state a claim for conversion.
The plaintiff argues in its opposing memorandum that the defendant, who initially had authority to use the plaintiff's property, used the plaintiff's property to an unauthorized extent or in an unauthorized way, resulting in conversion. The plaintiff claims that the defendant is liable in conversion for the period that the plaintiff was unable to use its trucks due to the PCB contamination.
Conversion is defined as an "unauthorized assumption and exercise of the right of ownership over goods belonging to another, to the exclusion of the owner's rights. . . . It is some unauthorized act which deprives another of his property permanently or for an indefinite time; some unauthorized assumption and exercise of the powers of the owner to his harm. The essence of the wrong is that the property rights of the plaintiff have been dealt with in a manner adverse to him, inconsistent with his right of dominion and to his harm." (Internal quotation marks omitted.) Aetna Life CasualtyCo. v. Union Trust Co., 230 Conn. 779, 790-91, 646 A.2d 799
(1994). "The seminal case in this state regarding conversion isColeman v. Francis, 102 Conn. 612, 129 A. 718
(1925). . . . Coleman established that there are two CT Page 10676 general classes of conversion: (1) that in which possession of the allegedly converted goods is wrongful from the outset; and (2) that in which the conversion arises subsequent to an initial rightful possession." (Internal quotation marks omitted.)Maroun v. Tarro, 35 Conn. App. 391, 396, 646 A.2d 251
(1994).
The plaintiff claims in its memorandum that the present case falls into the second class of conversion because "[t]he use of the plaintiff's trucks to transport the used oil was authorized; however, the extended storage of contaminated oil in plaintiff's trucks was not authorized." Plaintiff's Memorandum, p. 7. Based on the above definition, however, the plaintiff has failed to allege facts sufficient to establish a cause of action for conversion. The plaintiff does not allege in the complaint that the defendant exercised "the right of ownership" or had "possession" of the trucks to the exclusion of the plaintiff's rights. Rather, the plaintiff alleges that the defendant's wrongful conduct resulted in the loss of use of these trucks until the contaminated oil was removed and the trucks decontaminated. While this may give rise to a cause of action against the defendant, it does not amount to a conversion. "[A]bsent an allegation and proof that the vehicle was initially put into the defendant's lawful possession, the plaintiff has not made out a case under the second class of conversion." (Emphasis added.) Maroun v. Tarro, supra,35 Conn. App. 397. Furthermore, "the plaintiff has not alleged . . . wrongful possession of the . . . [trucks] from the outset as required by the first class of conversion." (Emphasis added.) Id.
"The authoritative general rule recognized in numerous decisions in this State is that the measure of damages in [conversion] is the value of the goods at the date of the conversion." Waterbury Petroleum Products, Inc. v. CanaanOil Fuel Co., 193 Conn. 208, 222, 477 A.2d 988 (1984) (the court noted, however, that this formula is not exclusive of other methods, and that consequential damages are also recoverable in a conversion action). Here, the plaintiff is not entitled to, nor is it seeking, the value of the trucks as the measure of damages in this case, and therefore conversion is not the appropriate cause of action. Essentially the plaintiff is seeking lost profits for the period in which it was unable to use its trucks. Lost profits are a proper measure of damages in a claim for breach of contract. Torosyan v. Boehringer IngelheimCT Page 10677Pharmaceuticals, Inc., 234 Conn. 1, 32, (1995) ("it is our rule that [u]nless they are too speculative and remote, prospective profits are allowable as an element of damage whenever their loss arises directly from and as a natural consequence of the breach").
Because the plaintiff does not allege that the defendant exercised the right of ownership over the plaintiff's trucks to the exclusion of the plaintiff's rights and is not seeking the value of the trucks as the measure of damages, the defendant's motion to strike the sixth count of the plaintiff's complaint must be granted.
CONCLUSION
Based on the foregoing, the defendant's Motion to Strike (#104) the third and sixth count of the plaintiff's complaint is granted.
SO ORDERED.
MICHAEL HARTMERE JUDGE OF THE SUPERIOR COURT