[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON DEFENDANTS' MAY 12, 1999 MOTION TO STRIKE
This case arises from the formation, attempted performance and alleged breach of a contract under which plaintiff Phillips Industrial Service Corporation ("Phillips") agreed with defendants Connecticut Light and Power Company ("CLP") and Northeast Utilities ("NU") to recoat a CLP/NU-owned equalization basin in Norwalk, Connecticut with a specific coating manufactured by defendant Advanced Polymer Services Incorporated ("APS"). Phillips claims, inter alia, that when the coating failed to adhere to the lining of the basin, despite its own best efforts to apply the coating in accordance with the manufacturer's instructions, CLP and NU breached the subject contract by wrongfully refusing to pay it for its work, refusing to permit it to reenter the job site to remove certain rented scaffolding equipment therefrom, and attempting to make it bear full responsibility for all damages that resulted from the product's failure.
In the third count of its Third Amended Complaint dated March 29, 1999 ("Complaint") Phillips alleges that several of CLP's and NU's actions, both in forming and later breaching the subject contract, constituted "unfair trade practices," within the meaning of the Connecticut Unfair Trade Practices Act ("CUTPA"), General Statutes 42-110a et seq. Claiming that the defendants' commission of such unfair trade practices has caused it to suffer certain ascertainable losses, Phillips now seeks damages for those losses, including actual or compensatory damages, punitive damages and reasonable attorney's fees, under CUTPA's private-remedy provision, General Statutes 42-110g. This claim for relief is based upon the following allegations of fact:
When CLP and NU formed their contract with Phillips, one CLP employee who participated in drafting its provisions, including its specification that an APS-manufactured product be used to coat the basin, was Andrew Harrington. Unbeknown to Phillips, Harrington's father, Joseph Harrington, was then an employee of APS who stood to gain financially if an APS product were required to perform the contract. Acting through Andrew Harrington, CLP and NU allegedly selected an APS product to CT Page 6590 recoat the basin solely to enrich the Harringtons. By selecting the product in this inappropriate manner, without regard to its suitability for the job at hand, CLP and NU allegedly "caused added risk to Phillips" that the product would fail; Complaint, Count III, ¶ 22; thereby "increas[ing] Phillips' liability;" Id., ¶ 24; and causing "actual damages [to Phillipsi when the product failed." Id., ¶ 27.
Against this background, Phillips claims that CLP and NU committed "unfair trade practices," within the meaning of CUTPA, in each of the following ways: first, by requiring that the contract be performed with an APS product solely to benefit the Harringtons; id., ¶ 33; second, by failing to inform Phillips of the added risk of product failure associated with the use of an APS product to recoat the basin; id., ¶ 25; third, by refusing to pay Phillips for its work when the APS product failed; ¶¶ 35, 36; and fourth, by attempting to shift responsibility to Phillips for damages resulting from the product's failure. Id., ¶¶ 34, 37. These actions, claims Phillips. were all "wilful, immoral, oppressive and unscrupulous" acts; id., ¶¶ 33-37; each of which is actionable under CUTPA because it was "carried out in the course of defendant's [sic] trade and business." Id., ¶ 39.
CLP and NU have now moved this Court to strike the third count of the Complaint on several grounds. The second such ground, which this Court finds to be dispositive, is that the defendants' alleged conduct was not carried out "in the conduct of any trade or commerce," as is required to establish CUTPA liability under Section 42-110g.
To meet that requirement, assert the defendants, the plaintiff must do more than allege, in conclusory fashion, that they engaged in unfair or deceptive acts or practices "in the course of their trade and business." Instead, it must allege facts tending to prove that the conduct in question was carried out in the defendant's primary trade or commerce, not merely in some incidental or ancillary aspect of its business activities. For the reasons that follow, this argument is well supported by both the language and logic of CUTPA, and by controlling federal case law interpreting the Federal Trade Commission Act.
Section 42-110 confers a private right of action under CUTPA upon "[a]ny person who suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment CT Page 6591 of a method, act or practice prohibited by section 42-J.J.Ob[.]" Section 42-110b, in turn, provides that, "No person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce."
The term "trade or commerce," as used in CUTPA,
 means the advertising, the sale or rent or lease, the offering for sale or rent or lease, or the distribution of any services and any property, tangible or intangible, real, personal or mixed, and any other article, commodity, or thing of value in this state.
General Statutes § 42-110a (4). In light of that definition, the only "unfair methods of competition and unfair or deceptive acts or practices" that are actionable under CUTPA are those used or employed by a defendant "in the conduct of" any "advertising, sale or rent or lease,. . . offering for sale or rent or lease, or . . . distribution of any services [or] any property, tangible or intangible, real, personal or mixed, [or] any other article, commodity, or thing of value in this state." Here, claim the defendants, the challenged count does not state a valid cause of action under CUTPA because it fails to allege either: (1) that at any relevant time, the defendants were involved in the conduct of any trade or commerce, to wit: the advertising, sale or rent or lease, offering for sale or rent or lease, or distribution by either defendant of any service, property or other article, commodity or thing of value in this state; or, accordingly, (2) that in the course of such advertising, sale or rent or lease, offering for sale or rent or lease, or distribution activity they engaged in any misconduct that could conceivably be actionable as an unfair or deceptive act or practice under Section 42-110g.
The Court agrees with the defendants that the plaintiff's Complaint fails to allege any facts tending to show that they were involved, at any relevant time, in the conduct of trade or commerce, as that term is defined in Section 42-110a(4). It fails, more specifically, to identify either defendant's trade or business, to list any service, property or other article, commodity or thing of value which either defendant advertises, sells or rents or leases, offers for sale or rent or lease, or distributes in this state, or thus to describe any act by either defendant in the course of such advertising, sale or rent or CT Page 6592 lease, offering for sale or rent or lease, or distribution activity. Here, moreover, the allegations at issue clearly suggest that the defendants' challenged actions occurred not while in conducting their own trade or commercial activities — to wit, the advertising, sale or rent or lease, offering for sale or rent or lease, or distribution by them of their own services, property or other articles, commodities or things of value, but in the plaintiff's sale of its own professional services to them. In particular, it is alleged that the defendants committed unfair trade practices while procuring the plaintiff's services to recoat a basin on their own property. The basin in question was not a commodity to be placed in the stream of commerce, for sale, rental, lease, distribution or otherwise. Instead, it was to be retained and used by the. defendants, as part of their own industrial property, after the plaintiff finished its work under the contract. A business' procurement of outside services to maintain or rehabilitate its own business property simply does not constitute the conduct of "trade or commerce" within the meaning of Section 42-110 (4)
In its opposition to the defendants' motion to strike, plaintiff Phillips correctly notes that the purposes of CUTPA are remedial, and that the statute should be broadly construed in light of those purposes. In a similar vein, the plaintiff rightly notes that the substantive scope of CUTPA is not limited to unfair or deceptive acts or practices that cause consumer injury, but extends more broadly to such acts or practices that cause ascertainable losses to "competitors or other business persons."McLaughlin Ford, Inc. v. Ford Motor Co., 192 Conn. 558, 567. Here, then, claims the plaintiff, it is entitled to bring an action under CUTPA because it is a "business person" that has been harmed by the defendants' unscrupulous conduct "in the course of [their] trade and business."
This argument, however, ignores the central point which the defendants have made. That point, to reiterate, is that "mere" unscrupulousness in the conduct of business activities is not actionable under CUTPA unless it occurs in that portion of such activities which constitutes the conduct of any trade or commerce, within the meaning of Section 42-110a (4). The focus of the statute is thus not on unscrupulous behavior by businessmen in every aspect of their business lives, but on those specific types of unscrupulous behavior that take place in, and adversely affect others who take tart in, the particular trade or commerce in which the defendant is engaged. See generally ConnecticutCT Page 6593Water Co. v. Town of Thomaston, 1996 WL (774-58 at 7 (Conn.Super. Nov. 8, 1996) (Corradino, J.) (noting that CUTPA was designed to "protect two classes or deal with two sets of problems. First, there is the protection of consumers from unfair or deceptive acts or practices. Then there is a concern with ensuring fair competition and in order to accomplish that end, competitors and other business people can bring a CUTPA. action. But at the very least, other business people, who are not direct competitors, must have some type of commercial relationship with the alleged wrongdoer — commercial relationship not being so much a business relationship but some kind of relationship in the marketplace so that the particular acts of wrongdoing alleged will interfere with fair and open competition in that particular marketplace.") Hence, though the statute is indeed remedial, and must be broadly construed in light of its protective purpose — to ensure fairness to consumers, competitors and other business people who take part in the defendants' relevant marketplace — its scope cannot be stretched beyond that purpose to reach other forms of business misconduct that do not occur in or affect the proper functioning of the defendants' marketplace.
In this case, the plaintiff has clearly alleged that it had a commercial relationship with the defendants, in the sense that the defendants were consumers of services in the plaintiffs'
marketplace. However, there is absolutely no allegation that the plaintiffs were ever involved — as consumers, competitors or other business persons — in the defendants' marketplace, much less that they were harmed by the defendants' unfair or deceptive acts or practices in that marketplace. The defendants, to reiterate, are simply not claimed to have engaged in any unfair or deceptive act or practice in the advertising, sale or rent or lease, offering for sale or rent or lease, or distribution of any services, property or other items of any kind. For that reason, the third count of the plaintiff's Complaint fails to plead a viable cause of action under General Statutes § 42-110g.
The foregoing analysis is fully consistent with that of several state and federal cases which have interpreted the "trade or commerce" provision of CUTPA or parallel provisions in the Federal Trade Commission Act, on which CUTPA was expressly modeled.[1] Those cases, which were brought to this Court's attention, without contradiction by the plaintiff,[2] in the defendants' two briefs in support of this motion, squarely hold that an unfair or deceptive act or practice by a business person does not occur "in the conduct of trade or commerce" unless it CT Page 6594 occurs in his primary trade or business, not merely incidental thereto. See Brandewiede v. Emery Worldwide 890 F. Sup. 79
(D.Conn. 1974) aff'd 66 F.3d 308 (2d Cir. 1995); see also AbelyWaste Oil Services, Inc. v. Ravenswood Development Corp. ,1995 Ct. Sup. 10669, 15 CLR 562 (Conn.Super. 1995) (holding that the defendant's unfair or deceptive acts or practices in the disposal of wastes were not actionable under CUTPA since waste disposal was merely incidental to the defendant's primary trade). Accord,Arawana Mills v. United Technologies Corp. , 795 F. Sup. 1238,1252-53 (D.Conn. 1992) (holding that unfair or deceptive acts or practices in the leasing of property was not actionable under CUTPA because it was merely incidental to the defendant's primary business of the repair and service of aircraft engines.). This Court is persuaded by the analysis of these cases, and thus will follow that logic here. Its firm conclusion, as previously derived from the text of CUTPA, is that the allegations of the third count fail to state a valid cause of action under General Statutes § 42-110g because they do not tend to establish that the defendants committed any unfair or deceptive act or practice in the conduct of its own primary trade or business.
For the foregoing reasons, this Court hereby orders that the third count of the plaintiff's Complaint be stricken for failure to state a claim upon which relief can be granted under Practice Book § 10-39.
Michael R. Sheldon, J.