[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON DEFENDANTS' MOTION TO STRIKE (#105)
I. Facts and Procedural Background
Presently before the court is a motion to strike the entire complaint and portions of the prayer for relief arising out of a contract to broker the sale of a business. On October 2, 2000, the plaintiff, Telesis Mergers Acquisitions, Inc. (Telesis), filed a revised six-count complaint directed against the defendants, Health Resources, Inc. (HRI), Lewis P. Bower, Jr. and Dana Bower (the Bowers). The first, third and fourth counts are directed at each of the defendants and allege a fraudulent conveyance in violation of General Statutes § 52-552e and the common law. The third count alleges a fraudulent transfer in violation of General Statutes § 52-552f[1] but is directed solely at the Bowers. The fifth count seeks to pierce the corporate veil and is directed at HRI and Lewis Bower. The sixth, count also directed at HRI and Lewis Bower alleges a violation of the Connecticut Unfair Trade Practices Act (CUTPA), General Statutes § 42-110a et seq.
The complaint alleges the following. Telesis is a company, headquartered in New Jersey, that specializes in brokering the purchase and sale of healthcare companies. HRI, a Connecticut corporation, is operated as a home healthcare and staffing company. Lewis Bower is the president and sole shareholder of HRI. Dana Bower is the wife of Lewis Bower and a former shareholder of HRI, Lewis Bower approached Telesis in connection with the sale of HRI in the spring of 1996. After detailed negotiations, HRI and Telesis entered into an agreement on June 12, 1996. The agreement required Telesis to seek a purchaser for HRI and detailed the method for calculating Telesis' commission. In connection with locating a potential buyer, Telesis distributed a "business profile" for HRI. After receiving the business profile from Telesis, Frontier Group and Patient Care, Inc. (Frontier) contacted HRI directly about a CT Page 3132-cn potential sale of HRI. HRI, through Bower, contacted Telesis and indicated that it would like to negotiate with Frontier directly. At about the same time, HRI attempted to renegotiate the fee owed to Telesis and to cap the fee at $100,000. Telesis informed HRI that it did not intend to renegotiate its fee. Telesis continued to market HRI while HRI directly negotiated with Frontier. Telesis continued to solicit offers and in fact received another offer to purchase HRI but HRI did not pursue the new offer.
On February 18, 1997, HRI closed on its sale of assets and closely related entities to Frontier for $10,800,000. Telesis, unaware of the sale, was excluded from the closing. As a result of the sale, $1,220,238.06 and stock in Frontier was transferred to HRI.[2]
HRI refused to pay Telesis the commission due pursuant to the agreement and Telesis sought arbitration of the dispute. The arbitrators entered an award in favor of Telesis for $466,949.63. On November 25, 1998, the Federal District Court for the District of New Jersey confirmed the arbitration award. Telesis domesticated the judgment in the State of Connecticut in May of 1999.
Telesis also alleged that shortly after HRI received the $1,220,238.06 payment from Frontier, HRI, at the direction of Lewis Bower, transferred the sum to Lewis Bower and Dana Bower for no consideration. Payment was made to Dana Bower even though prior to the sale of HRI, Dana Bower transferred her one half of the shares of HRI stock to Lewis Bower making him the sole shareholder of HRI. It is further alleged that HRI collected several hundred thousand dollars worth of accounts receivable and transferred those sums to Lewis Bower and Dana Bower for no consideration. HRI has not paid on the judgment.
On October 17, 2000, the defendants filed a motion to strike the entire complaint as well as the prayer for relief in as far as it seeks punitive damages, attorney's fees, interest and costs pursuant to; the first, second, third and fourth counts of the complaint. On November 24, 2000, the plaintiff filed its objection to the motion to strike. All parties have filed appropriate memoranda in accord with the rules of practice. Practice Book § 10-42.
II. Standard of Review
"The purpose of a motion to strike is to contest . . . the legal sufficiency of the allegations of any [complaint] . . . to state a claim upon which relief can be granted." (Internal quotation marks omitted.) CT Page 3132-coPeter-Michael, Inc. v. Sea Shell Associates, 244 Conn. 269, 270,709 A.2d 558 1998). "A motion to strike admits all facts well pleaded; it does not admit legal conclusions or the truth or accuracy of opinions stated in the pleadings." (Emphasis omitted; internal quotation marks omitted.) Faulkner v. United Technologies Corp., 240 Conn. 576, 588,693 A.2d 293 (1997). "The court must construe the facts in the complaint most favorably to the plaintiff." (Internal quotation marks omitted.) Id., 580. The plaintiff is not required to expressly allege facts if they are necessarily1 implied. See Pamela B. v. Ment, 244 Conn. 296, 308,709 A.2d 1089 (1998).
III. The First Count
The first count of the revised complaint alleges a violation of General Statutes § 52-552e by HRI and the Bowers. The defendants argue that the first count should be stricken because the allegations are insufficient to state a cause of action under either subsection §52-552e (a)(1) or (2). They plaintiff claims that it has sufficiently pleaded a claim under both subsections of the statute.
With respect to § 52-552e (a)(1), the defendants specifically argue that the plaintiff's allegation in paragraph 25 of the first count of the revised complaint that "HRI and the Bowers were well-aware that Telesis was asserting a meritorious claim to a significant fee as a result of the HRI sale of assets to Frontier" is not supported by the facts pleaded. The defendants also argue that the plaintiff's allegation regarding the defendants' "intent to hinder, delay or defraud any creditor of the debtor" is conclusory and improper. (Revised Complaint, First Count, ¶ 26.)
General Statutes § 52-552e (a) provides: "A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, if the creditor's claim arose before the transfer was made or the obligation was incurred and if the debtor made the transfer or incurred the obligation: (1) With actual intent to hinder, delay or defraud any creditor of the debtor; or (2) without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor (A) was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction, or (B) intended to incur, or believed or reasonably should have believed that he would incur, debts beyond his ability to pay as they became due." In determining the intent of the transferor, the court is permitted to consider, among other factors, "whether: (1) The transfer or obligation was to an insider, (2) the CT Page 3132-cp debtor retained possession or control of the property transferred after the transfer, (3) the transfer or obligation was disclosed or concealed, (4) before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit, (5) the transfer was of substantially all the debtor's assets, (6) the debtor absconded, (7) the debtor removed or concealed assets, (8) the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred, (9) the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred, (10) the transfer occurred shortly before or shortly after a substantial debt was incurred, and (11) the debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor." General Statutes § 52-552e (b).
The plaintiff's allegations, when viewed in a light favorable to the plaintiff, sufficiently state, a cause of action under § 52-552e (a) (1). General Statutes § 52-552b (4) provides that a creditor is "a person who has a claim." A claim is defined as "a right to payment, whether or not the right is reduced to judgment, liquidated. unliquidated, fixed, contingent. matured, unmatured. disputed, undisputed, legal, equitable, secured or unsecured." General Statutes § 52-552b (3). The plaintiff has alleged that on June 12, 1996. Telesis and HRI entered into an agreement pursuant to which Telesis would seek a purchaser for HRI and HRI would pay a fee based on the sale price. (Revised Complaint, First Count, ¶ 7.) Telesis created and distributed a business profile of HRI and attracted a potential buyer, Frontier. (Id., ¶ 8.) HRI attempted to reduce Telesis' fee because it directly negotiated a sale with Frontier but Telesis rejected this offer. (Id., ¶ 10). The sale was consummated on February 18, 1997 (Id., ¶ 12); the alleged fraudulent transfers occurred shortly after the sale. (Id., ¶¶ 21 and 22) These allegations support the claim that Telesis is a creditor of HRI and that its claim arose prior to the transfer being made.
The plaintiff has also pleaded sufficient facts to support an allegation that the transfer was made with intent to hinder, delay or defraud any creditor when viewed in a light favorable to the plaintiff. The pleadings of the plaintiff's first count reflect many of the factors that a court may consider in determining the debtor's intent when transferring assets as set forth in General Statutes § 52-552e (b). The plaintiff has alleged that the transfer was made to an insider, Lewis Bower (Revised Complaint, First Count, ¶ 21); that Lewis Bower retained control of the assets after the transfer (Id., ¶¶ 21-25); CT Page 3132-cq that the transfer was of substantially all of HRI's remaining assets (Id., ¶¶ 21 and 23); and that HRI was aware of a potential lawsuit prior to the transfer. (Id., ¶ 10). These facts support the allegation that the transfer in question may have been fraudulent. For the reasons stated, the plaintiff has properly pleaded a fraudulent transfer under § 52-552e (a)(1)[3].
IV. The Second Count
The defendants argue that the second count should be stricken because the plaintiff has only pleaded the legal conclusion that "HRI was rendered insolvent by virtue of the transfers, accomplished at the direction of Bower." (Revised Complaint, Second Count, ¶ 27.) Specifically, the defendants argue that the plaintiff has not alleged any facts to support the allegation that, at the time of the transfers or as a result of the transfers, HRI was insolvent as that term is defined in General Statutes § 52-552c(a)[4]. The plaintiff argues that it has properly pleaded a cause of action under subsection (a) of General Statutes § 52-552f.
General Statutes § 52-552f (a) provides in relevant part: "A transfer made or obligation incurred by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made or the obligation was incurred if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation." As previously determined, the plaintiff has properly alleged that it is a creditor of HRI and that the claim arose prior to the alleged fraudulent transfer. The plaintiff has also alleged that the transfer of assets from HRI to the Bowers was made without consideration. (Revised Complaint, Second Count, ¶¶ 21, 23, 25, 26.) The court is not persuaded that the allegation that the fraudulent transfer rendered HRI insolvent" is a legal conclusion as opposed to a factual allegation.
Even if it were a legal conclusion, however, it is properly supported by factual allegations when the pleadings are viewed in a light favorable to the plaintiff. The plaintiff has alleged that HRI has never paid on the judgment which is a valid claim against HRI. (Id., 17.) Furthermore, the plaintiff has alleged that the transfer was of substantially all of HRI's remaining assets. (Id., ¶¶ 21 and 23.) These factual pleadings support the allegation that the transfer rendered HRI "insolvent" particularly when General Statutes § 52-552c (b) creates a presumption of insolvency when a debtor is generally not paying its debts as they CT Page 3132-cr become due.
V. The Third and Fourth Counts
The defendants argue that the third and fourth counts of the revised complaint should be stricken because those counts merely incorporate the allegations of the first count and second counts, respectively. Specifically, the defendants are seeking to strike the third and fourth counts on the same grounds and for the same reasons advanced to strike the first and second counts. The plaintiff argues that when viewed in a light favorable to the plaintiff that the allegations of both the third and fourth counts state a valid cause of action for fraudulent conveyance under the common law.
"The party seeking to set aside a conveyance as fraudulent bears the burden of proving either (1) that the conveyance was made without substantial consideration and rendered the transferor unable to meet his obligations: or (2) that the conveyance was made with a fraudulent intent in which the grantee participated. . . . The party seeking to set aside the conveyance need not satisfy both alternatives. . . ." (Citations omitted; internal quotation marks omitted.) Shawmut Bank v. BrooksDevelopment Corp., 46 Conn. App. 399, 405-06, 699 A.2d 283 (1997). With respect to both counts, the plaintiff has pleaded and the defendants do not dispute that the transfer occurred. Moreover, the plaintiff has alleged that the transfer of assets from HRI to the Bowers was made without consideration. (Revised Complaint, Fourth Count, ¶¶ 21, 23, 25, 26.) Furthermore, the allegations as discussed in Parts III and IV of this opinion are sufficient to allege the HRI was unable to meet its obligations and the transfer was made with fraudulent intent.
VI. The Fifth Count
The defendants next argue that the fifth count of the complaint seeking to pierce the corporate veil must be stricken because it fails to state a claim for liability against HRI. The plaintiff argues that it has properly pleaded a cause of action to pierce the corporate veil pursuant to the instrumentality test.
"Courts will disregard the fiction of a separate legal entity when a corporation is a mere instrumentality or agent of another corporation or individual owning all or most of its stock." (Internal quotation marks omitted.) Davenport v. Quinn, 53 Conn. App. 282, 299-300, 730 A.2d 1184
(1999). "When determining whether piercing the corporate veil is proper, our Supreme Court has endorsed two tests: the instrumentality test and CT Page 3132-cs the identity test. The instrumentality rule requires, in any case but an express agency, proof of three elements: (1) Control, not mere majority or complete stock control, but complete domination, not only of finances but of policy and business practice in respect to the transaction attacked so that the corporate entity as to this transaction had at the time no separate mind, will or existence of its own; (2) that such control must have been used by the defendant to commit fraud or wrong, to perpetrate the violation of a statutory or other positive legal duty, or a dishonest or unjust act in contravention of plaintiff's legal rights; and (3) that the aforesaid control and breach of duty must proximately cause the injury or unjust loss complained of" (Emphasis omitted; internal quotation marks omitted.) Davenport v. Quinn, supra, 53 Conn. App. 300.
The fifth count of the complaint incorporates the fraudulent conveyance allegations of the fourth count. In addition, the plaintiff also alleges that throughout the existence of HRI, Lewis Bower, as president, controlled and made all decisions regarding the company. (Revised Complaint, Fifth Count, ¶ 30.) The plaintiff further alleges that, except for a brief period, Lewis Bower was the sole shareholder of HRI and made all significant financial decisions. (Id., ¶ 31.) Furthermore, the plaintiff alleged that "Bower's complete domination of both the finances, policy, and business practices of HRI with respect to its relationship with Telesis was so thorough that HRI did not have a separate mind, will or existence of its own." (Id.) These allegations along with the allegations of the fraudulent transfer are sufficient to state a cause of action to pierce the corporate veil.
VII. The Sixth Count
The defendants argue that the sixth count of the revised complaint should be stricken because it is legally insufficient. Specifically, the defendants argue that the sixth count "does not make an allegation as to which trade or commerce the defendants were involved in for the purposes of the CUTPA claim, nor does it allege that the [defendants'] conduct that the plaintiff claims was in violation of CUTPA was undertaken in the course of that trade or commerce." (Memorandum of Law in Support of Defendants' Motion to Strike, p. 18.) The crux of the defendants argument is that the conduct alleged to violate CUTPA is incidental to defendants' trade or business and, therefore, cannot serve as the basis for a CUTPA violation.
The plaintiff, on the other hand, argues that CUTPA does not require a consumer relationship and that all that is required to properly allege a CUTPA violation is an allegation "that the acts complained of were CT Page 3132-ct performed in a trade or business." (Internal quotation marks omitted.)Quimby v. Kimberly Clark Corporation, 28 Conn. App. 660, 669, 613 A.2d 838
(1992). The plaintiff also argues that even if the conduct alleged is incidental to defendants' business, the conduct can nevertheless form the basis of a CUTPA violation because the conduct arose within a "business context."
Section 42-110b (a) of the General Statutes states: "No person shall engage in unfair methods, of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." General Statutes § 42-110a (3) defines person as "a natural person, corporation, limited liability company, trust, partnership, incorporated or unincorporated association, and any other legal entity." Trade and commerce are defined as "the advertising, the sale or rent or lease, the offering for sale or rent or lease, or the distribution of any services and any property, tangible or intangible, real, personal or mixed, and any other article, commodity, or thing of value in this state." General Statutes § 42-110a (4).
"Cases decided by the United States District Court for the District of Connecticut have held that where the actions of the defendant are incidental to its primary business, it cannot be liable under CUTPA."Feen v. Benefit Plan Administrators, Superior Court, judicial district of New Haven at New Haven, Docket No. 406726 (January 13, 1999, Devlin,J.). Some Connecticut Superior Court cases have applied the same analysis. See, e.g., Abely Waste Oil v. Ravenswood Development Corp., Superior Court, judicial district of New Haven at New Haven, Docket No. 369487 (September 15, 1995, Hartmere, J.) (15 Conn. L. Rptr. 562);Barnes v. General Electric Co., Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. 529354 (July 25, 1995,Hennessey, J.) (14 Conn. L. Rptr.455).
Other Superior Courts examining the issue have applied a "business context" standard to conduct alleged to violate CUTPA. See, e.g., Kay v.Seiden, Superior Court, judicial district of Ansonia/Milford, Docket No. 048587 (July 30, 1999, Corradino, J.) (25 Conn. L. Rptr. 192). The business context standard is derived from cases decided under the consumer protection statutes of the Commonwealth of Massachusetts.[5]
The business context standard may be summarized as follows: An isolated transaction that occurs outside of the ordinary course of the defendant's primary business may constitute a CUTPA violation provided it takes place in a business context. Kay v. Seiden, supra, 25 Conn. L. Rptr. 192.
The Connecticut Supreme Court has held that the consumer protection CT Page 3132-cu statutes in Massachusetts are virtually identical to our own and has repeatedly reviewed decisions of the Supreme Judicial Court of Massachusetts with regard to the scope of CUTPA. Normand JosefEnterprises v. Connecticut National Bank, 230 Conn. 486. 521, 646 A.2d 289 (1994). Giving the statute a generous interpretation to implement its remedial purposes; Kim v. Magnotta, 249 Conn. 94, 108, 733 A.2d 809
(1999); the court finds the business context standard to be an applicable standard. With this in mind, therefore, the court must determine if the plaintiff's CUTPA count is properly pleaded.
The defendants have alleged that HRI and Bower were engaged in trade and commerce with the State of Connecticut. (Revised Complaint, Sixth Count, ¶ 26.) The plaintiff further alleged that Lewis Bower had approached Telesis in connection with the sale of HRI, and, after negotiations. HRI and Telesis entered into an agreement requiring Telesis to seek a purchaser for HRI. (Revised Complaint, Sixth Count. ¶¶ 8-12.). The allegations discussed in part III of this opinion, supporting an intent to hinder delay or defraud, and incorporated in the sixth count, support the allegation of unfair. deceptive. immoral, unethical, unscrupulous or oppressive conduct. The plaintiff, therefore, has sufficiently alleged a CUTPA violation.
VIII. Punitive Damages
The defendants also seek to have stricken the plaintiff's prayer for relief in so far as it requests punitive damages for the first, second, third and fourth counts. comprising the plaintiff's statutory and common law fraudulent conveyance claims. The plaintiff's memorandum does not address this aspect of the defendants' motion to strike.
"Common law principles do not authorize a general creditor to pursue the transferee in a fraudulent conveyance action for anything other than the specific property transferred or the proceeds thereof. . . . [Furthermore,] the language of [§ 52-552] Provides that a conveyance made with an intent to avoid a debt or duty belonging to others is voidable but it does not provide for an award of punitive damages." Derderian v. Derderian, 3 Conn. App. 52), 529, 490 A.2d 1008, cert. denied, 196 Conn. 811, 495 A.2d 279 (1985). The motion to strike the prayer for relief in so far as it seeks punitive damages from the first, second, third and fourth counts is proper.
IX. Interests, Costs and Attorney's Fees
The defendants also seek to have stricken from the plaintiff's prayer CT Page 3132-cv for relief requests for interest, costs, and attorney's fees pursuant to the agreement for the first, second, third and fourth counts. The plaintiff argues that the motion to strike with respect to the claim for interest, costs and attorney's fees should be denied because the agreement between Telesis and HRI provided for them in the event of litigation.
As noted in part VIII, upon proof of a fraudulent conveyance a general creditor may only; recover the specific property transferred or the proceeds from the sale of that property. Derderian v. Derderian, supra,3 Conn. App. 529. Furthermore, "[i]n the United States, the general rule of law known as the American Rule is that a prevailing litigant ordinarily is not entitled to collect a reasonable attorney's fee from the opposing party as part of [its] damages or costs . . . There are certain exceptions to this rule. . . . In the main, exceptions are based upon statutory or contract provisions authorizing the recovery of attorney's fees by a prevailing litigant." (Internal quotation marks omitted.) City of Hartford v. International Assn. of Firefighters, Local760, 49 Conn. App. 805, 818, 717 A.2d 258, cert. denied, 247 Conn. 920,722 A.2d 809 (1998). The UFTA does not provide for interest, costs or attorney's fees and the complaint does not allege that the agreement between Telesis and HRI provides for interest, costs and attorney's fees associated with litigation. The motion to strike the requests for interest, costs, and attorney's fees pursuant to the agreement from the first, second, third and fourth counts of the prayer for relief is proper.
X. Conclusion
Because the plaintiff has sufficiently pleaded causes of action, the defendants' motion to strike the first, second, third, fourth, fifth and sixth counts of the complaint is denied. The defendants' motion to strike the request for punitive damages, interest, costs and attorney's fees from the prayer for relief with respect to the first, second, third and fourth counts, however, is granted as the plaintiff's recovery is limited to the value of the property or its proceeds pursuant to a statutory or common law fraudulent conveyance action.
It is so ordered.
By the court,
Gilardi, J. CT Page 3132-cw